The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.





Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) ) ) | CHAPTER 13 |
| CORY CRAIG WALKER and JENNIFER PAULINE WALKER, | ) ) ) | CASE NO. 11-60413 |
| | ) ) | JUDGE RUSS KENDIG |
| Debtors. | ) ) ) ) ) | **MEMORANDUM OF OPINION (NOT FOR PUBLICATION)** |

Now before the court is Debtors' Objection to Claim #13-2 by claimant David M. Williams ("Claimant").

The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

Claimant filed a proof of claim #13 in the amount of $3,786.98 on May 3, 2011. On May 20, 2011, Debtors filed an Objection to Proof of Claim #13 on the basis that "the items of damage alleged in the proof of claim are non-existent and manufactured by the claimant." Claimant filed a Response to Objection to Proof of Claim on June 3, 2011 in support of his proof of claim. On August 5, 2011, Claimant filed an amended proof of claim #13-2 ("claim") in the amount of $6,738.43. In response to the amended proof of claim, Debtors again filed an Objection to Proof of Claim ("Objection") to claim #13-2 on August 17, 2011.

The claim, in the total amount of $6,738.43 after deducting Debtors' security deposit of $1,300.00, is broken down into the following components:

| | |
|---|---|
| $171.00 | Municipal Court Filing and Writ of Restitution |
| $747.50 | January 2011 Rent and Late Fees |
| $475.32 | Unpaid Electric Bills |
| $665.00 | February 2011 as Liquidated Damages |
| $399.00 | Monthly Surcharge of 10% of Rent |
| $4,080.61 | Receipts for Materials for Repairs |
| $1,500.00 | Labor for Stimpert Mechanical for Repairs |

On October 17, 2011 and November 21, 2011, the court held an evidentiary hearing on Debtors' Objection. Claimant called the following witnesses to testify: Debtor Jennifer Walker, Debtor Cory Walker, Claimant David Williams, Jim Dalenburg, Beauford T. Williams, and Rick Stimpert. Testifying on behalf of Debtors was Debtor Cory Walker.

## LAW AND ARGUMENT

A proof of claim filed pursuant to 11 U.S.C. § 501 is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If an "objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount." 11 U.S.C. § 502(b).

Pursuant to Federal Rule of Bankruptcy Procedure 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." *See also* 11 U.S.C. § 502(a); In re Consol. Pioneer Mortg., 178 B.R. 222, 225-26 (B.A.P. 9th Cir. 1995), *aff'd on other grounds*, 91 F.3d 151 (9th Cir. 1996). The objecting party bears the initial burden to produce evidence sufficient to rebut the presumption of validity of the claim. In re Pruden, No. 04-36026, 2007 Bankr. LEXIS 4385, at 29 (Bankr. N.D. Ohio Dec. 28, 2007) (citing In re Leatherland, 302 B.R. 250, 258-59 (Bankr. N.D. Ohio 2003)); *accord* In re Allegheny Int'l, 954 F.2d 167, 173-74 (3d Cir. 1992).

For the objecting party to negate the prima facie validity of a claim, the objection must:

(1) assert in a writing filed with the Court that there is some reason the claimant does

not have a right to payment; (2) sign the objection; (3) if appropriate, assert that the claim is in fact based on a writing and that the documentation attached to the claim is insufficient; and (4) come forward with some legal reason or some factual evidence to defeat the claim.

In re McLaughlin, 320 B.R. 661, 665 (Bankr. N.D. Ohio 2005) (citing In re Kemmer, 315 B.R. 706, 713 (Bankr. E.D. Tenn. 2004)). If the objecting party meets the burden, then the burden shifts to the claimant to prove the validity and amount of the claim by a preponderance of the evidence. Leatherland, 302 B.R. at 258-59; In re Bosak, 242 B.R. 400, 405 (Bankr. N.D. Ohio 1999); In re Nelson, 206 B.R. 869, 878 (Bankr. N.D. Ohio 1997).

Claimant's claim is presumed to be prima facie evidence of the validity and amount of the claim pursuant to Federal Rule of Bankruptcy Procedure 3001(f). Debtors' Objection must meet the burden of producing evidence sufficient to rebut the presumption of the validity of the claim. The Objection asserts that the claim is unfounded, based on unnecessary costs, and has no factual or legal basis. Such assertions meet the burden by both asserting that Claimant is not entitled to payment and setting forth factual evidence to defeat the claim. The burden now shifts to Claimant to prove the validity and amount of the claim by a preponderance of the evidence.

In order to meet this burden, Claimant himself testified and called witnesses, and presented over 100 photographs to support his claim. Further, Claimant presented receipts for materials and labor for repairs. The court now considers each component of the claim to determine if Claimant has met his burden of proof.

A.   *Municipal Court Fees*

Claimant's proof of claim seeks municipal court fees totaling $171.00 for filing fees and for a writ of restitution. Proof of Claim #13-2. Debtors dispute these court costs as a component of the claim on the basis that Claimant filed these proceedings after Debtors advised that they were vacating the property. Debtors claim that these fees were unnecessary.

At the evidentiary hearing, Claimant testified that despite Debtors notice that they intended to vacate the property, they had not removed all of their personal property from the property nor had they returned the keys to the property to Claimant. For these reasons, Claimant was unsure if Debtors had actually vacated the property. Rather than potentially face the consequences of wrongfully evicting Debtors by simply entering the property and changing the locks, Claimant proceeded to seek relief in municipal court so that legally he could change the locks and access his property.

The court finds that Claimant's actions with respect to the municipal court proceedings were reasonable. Debtors' actions did not clearly indicate that they had vacated the property and Claimant's hands were tied if he wanted to proceed legally and avoid a wrongful eviction. In an abundance of caution, Claimant sought relief in municipal court to protect his rights. Further, Claimant attempted to mitigate his claim against Debtors by formally evicting Debtors due to nonpayment of the rent for January rather than allowing his losses to grow exponentially.

Claimant's costs with respect to filing the municipal court proceedings were reasonable and not unnecessarily high given the situation. The court finds that Claimant has met his burden of proof with respect to the municipal court fees.

Accordingly, the court finds that Claimant is entitled to municipal court fees totaling $171.00.

B.  *January 2011 Rent and Late Fees*

Claimant's proof of claim seeks rent in the amount of $665.00 for January 2011 and late fees totaling $82.50 related to the rent for January 2011. Proof of Claim #13-2 and Creditor Exhibit 19.

Debtors admit in their Objection, paragraph 3, that they did not give timely notice to exclude the rent of $665.00 for January 2011 and, therefore, are responsible for it. While the court believes that the law also supports that Claimant is entitled to receive rent for January 2011, such a review of the law is not necessary given Debtors' admission of their responsibility to pay it. Therefore, the court finds that Claimant has met his burden of proof with respect to the rent for January 2011 and is entitled to $665.00.

The remaining question is whether Claimant is entitled to the late fees totaling $82.50, comprised of a $25.00 late payment fee and $2.50 per day late fee for 23 days in the total amount of $57.50. Creditor Exhibit 19. Pursuant to the lease agreement between Claimant and Debtors, paragraph 5 provides that Debtors agreed to pay $25.00 for each late payment plus $2.50 for each additional day late. Creditor Exhibit 6. Debtors do not dispute the accuracy of the lease or that the provision applies in this circumstance. Further, Claimant seeks the late fees for only 23 days, or stated otherwise, Claimant froze the late fees as January 24, 2011 rather than allowing the late fees to continue to accrue. For these reasons, the court finds that Claimant has met his burden of proof with respect to the late fees related to the rent for January 2011 and is entitled to late fees totaling $82.50.

Accordingly, the court finds that Claimant is entitled to a total of $747.50 for rent for January 2011 and late fees associated with Debtors' failure to pay rent for January 2011.

C.  *Unpaid Electric Bills*

Claimant's proof of claim seeks unpaid electricity bills totaling $475.32. Proof of Claim #13-2 and Creditor Exhibit 19. Claimant testified that the arrangement between Claimant and Debtors was that Claimant paid the electric bill for the entire property and billed to Debtors their portion of the electric bill for each month based upon a formula. Debtors do not dispute this arrangement or the accuracy of Claimant's billing practices. Debtors dispute, however, owing $475.32 for electricity on the basis that Debtors advised Claimant to have the electricity service

switched to his name.[1]

Debtors' argument fails for several reasons. First, the electricity was always in Claimant's name. As such, it was not necessary, nor even possible, for Claimant to transfer the electric service into his name upon Debtors vacating the property. Second, Claimant seeks unpaid electric bills only through December 2010 even though Debtors undisputedly has possession of the property into January 2011. On January 20, 2011, Claimant sent a letter to Debtors detailing the electricity billing in the total amount of $475.32, which was comprised of $193.24 for the unpaid balance for the previous month, $19.32 in service fees for the unpaid balance, and $262.75 for the current month electricity billing. Creditor Exhibit 12. At the time that Claimant sent this letter to Debtors, Debtors had not vacated the property and were still utilizing the electric service.

Claimant is not attempting to collect for electric bills arising after Debtors vacated the property. Claimant has very reasonably frozen the electricity bills as of the December billing. Debtors essentially received electric service for free for the time that they resided in the property during January. It is unreasonable for Debtors not to pay the unpaid electricity bill of $475.32. The court finds that Claimant has met his burden of proof with respect to the unpaid electric bills.

Accordingly, the court finds that Claimant is entitled to $475.32 for electricity costs arising while Debtors had possession of the property.

D. *February 2011 Rent as Liquidated Damages*

Claimant's proof of claim seeks $665.00 for rent for February 2011 as liquidated damages for early termination of the lease. Proof of Claim #13-2. Claimant argues that he is entitled to rent for February 2011 because he and Debtors had a lease agreement through July 2011. Claimant asserts that the lease agreement in effect provided for an early termination fee in the amount of one month's rent as liquidated damages should Debtors terminate the lease before its expiration. Claimant acknowledges that Debtors did not sign a written lease for the term of July 2010 through July 2011, but alleges that Debtors had verbally committed to a year lease for that time period. Claimant argues that Debtors' intent to commit to a year lease is evidenced by their failure to pay the monthly surcharge of $66.50, applicable only if Debtors chose a month-to-month tenancy rather than renewing the lease for another year.

Debtors argue that they have no responsibility for February 2011 rent because they were operating under a month-to-month tenancy. Having given notice to vacate in December 2010, Debtors argue that their responsibility for rent to Claimant terminated in January 2011. Debtors

---

[1] In Debtors' Objection, Debtors dispute unpaid electricity bills in the amount of $557.82. Debtors mistakenly categorized late fees totaling $82.50 as electricity bills. Claimant presented evidence to detail that the electricity costs were $475.32 and that late fees totaled $82.50. Creditor Exhibit 19. The court will address the unpaid electricity bill in the amount of $475.32, not the $557.82 noted by Debtors.

dispute Claimant's allegation that they were operating under a year lease for the period of July 2010 through July 2011.

The court finds that Debtors and Claimant were operating under a month-to-month tenancy. First, Debtors did not sign and return the lease for the period of July 2010 through July 2011. Debtors had resided in the property since July 2006 and had signed written leases for the previous years' lease terms, including as recent as July 2009 for the period of July 2009 through July 2010. The court finds that Debtors' failure to sign a lease for the period of July 2010 through July 2011 indicates their desire to continue their tenancy with Claimant on a month-to-month basis.

Second, the most recent written lease, for the period of July 2009 through July 2010, establishes that if Debtors provided no notice regarding the renewal of the lease or vacating the property, then the lease agreement would be extended as a month-to-month tenancy. Claimant stated that Debtors verbally agreed to renew the lease, but provided no further evidence to substantiate this verbal renewal. Debtors dispute the verbal renewal of the lease for the July 2010 through July 2011 term. As such, after weighing the testimony and evidence as presented, the court finds that Debtors did not renew the lease for the period of July 2010 through July 2011 and, therefore, were operating under a month-to-month tenancy with Claimant.

Finding that Claimant and Debtors were operating under a month-to-month tenancy, the liquidated damages clause for early termination of the previous lease does not apply to Debtors. The liquidated damages clause applies only if Debtors were committed to a set term lease with Claimant. By definition, a month-to-month tenancy has no set term. As such, the court finds that Claimant has not met his burden of proof with respect to the rent for February 2011 as liquidated damages and the liquidated damages clause for early termination is not applicable to Debtors.

Accordingly, the court finds that Claimant is not entitled to $665.00 for rent for February 2011.

E.    *Monthly Surcharge*

Claimant's proof of claim seeks a total of $399.00 for monthly surcharges for six months, from August 2010 through January 2010. Proof of Claim #13-2. Claimant argues that if Debtors were operating under a month-to-month tenancy then, pursuant to the most recent lease agreement, Debtors agreed to pay a monthly surcharge of $66.50, or 10% of the monthly rent of $665.00. Claimant argues that Debtors have not paid the $66.50 monthly surcharge since August 2010 and that, therefore, he is entitled to $399.00 for the monthly surcharge of $66.50 for six months.

Debtors dispute the monthly surcharge arguing only that there is no factual or legal basis for such a fee.

While the most recent lease agreement between Claimant and Debtors provides for a monthly surcharge of 10% of the monthly rent should Debtors choose a month-to-month tenancy,

Claimant waived his right to seek the monthly surcharge. Waiver is the "the intentional relinquishment or abandonment of a known right." Black v. Columbus Pub. Sch., 2006 WL 2385359, at 6 (S.D. Ohio 2006) (citing United States v. Stines, 313 F.3d 912, 917 (6th Cir. 2002)). To be effective, waiver requires "(1) an existing right, benefit, or advantage; (2) actual or constructive knowledge of the existence of such right, benefit, or advantage; and (3) an intention to relinquish this right." Gomez v. Huntington Trust Co., N.A., 2001 WL 1112693 (N.D. Ohio 2011) (unreported) (citing Weaver v. Weaver, 36 Ohio App. 3d 210, 212 (1987)). Waiver is typically deemed a question of fact. See Guthartz v. Park Centre West Corp., 2009 WL 278960 (S.D. Fla. 2009); Ryder v. Bank of Hickory Hills, 585 N.E.2d 46 (Ill. 1992).

The first two elements are met because Claimant had the right to the monthly surcharge and had both actual and constructive knowledge of this right. The remaining question is whether Claimant intended to relinquish this right. Claimant accepted the rent of $665.00 without the monthly surcharge for the months of August 2010 through December 2010. Further, Claimant provided no evidence that he attempted to obtain the monthly surcharge from Debtors when they paid monthly rental payments of only $665.00 without the monthly surcharge for the months of August 2010 through December 2010. One cannot lie in the weeds and allow a sum to accrue while accepting payments in a lesser amount. To do so constitutes Claimant's intention to waive his right to the monthly surcharge.

Since Debtors and Claimants were not operating under a written lease since August 2010 and, as determined by this court, were operating under a month-to-month tenancy, Claimant should have demanded the monthly surcharge from Debtors if he expected Debtors to be paying it. Without evidence clearly showing that Claimant did not waive the monthly surcharge, Claimant is not entitled to collect the monthly surcharge now. The court finds that Claimant has not met his burden of proof with respect to the monthly surcharge.

Accordingly, the court finds that Claimant is not entitled to $399.00 for the monthly surcharge for six months.

F.      *Materials and Labor for Repairs*

Claimant's proof of claim seeks $4,080.61 for materials for repairs and $1,500.00 for labor for repairs. Proof of Claim #13-2. Claimant presented over 100 photographs at the evidentiary hearing to support the amount and types of damages to the property, as well as receipts for materials and labor necessary to repair the damages.

The testimony of Claimant and other witnesses indicated that the condition of the property prior to Debtors taking possession was immaculate. Claimant testified that he sought to maintain his property in good condition with higher end fixtures. Claimant took pride in the property and strived to maintain a comfortable, appealing home for his tenants. The testimony of Beauford T. Williams and Jim Dalenburg, both of whom had seen the property prior to Debtors taking possession, indicated that the property was in good condition and well maintained before Debtors took possession in July 2006. Both witnesses testified that the condition of the property after Debtors vacated it was horrendous.

Debtors, in their Objection, argue that most of the alleged damages were not caused by them, were for the betterment of the property, were normal wear and tear, and a few were actually damaged by Debtors. At the evidentiary hearing, Debtors made virtually no attempt to assert that they did not cause the damage to the property as alleged by Claimant. Debtors essentially ignored the majority of the damages to the property and acknowledged the damages only when asserting that Debtors had repaired the property after the date when Claimant photographed the damages to the property.

After reviewing the evidence presented and listening to the testimony of the witnesses, the court is astounded and shocked at the amount of damage that Debtors caused to the property during their tenancy. Claimant presented over 100 photographs to the court that showed countless large holes in almost every wall with many of the holes exceeding six inches in diameter. Of particular note to the court was one hole that went completely through the drywall in the hallway and through the drywall in the adjacent room, leaving a gaping hole from the hallway directly into the room. Claimant also presented photographs of nearly all interior and closet doors with scratches and deep gouges, missing door knobs and pulls, and stickers affixed to them. In addition, pieces of the kitchen's wooden cabinetry were removed and presumably discarded.

Particularly perplexing to the court, Claimant presented photographs that showed the replacement of storm door screws with lag bolts, which caused the casing of the doorway to split. Further, one photograph illustrated how the screen or door had been bent, causing a gap between the screen and the door. The gap was filled with some sort of bright red glue or caulk. Another photograph evidenced a storm door handle that had been sheared off from the door, leaving a person unable to open the door except by using their fingertips around the frame of the door. Yet another photograph showed a refrigerator door utterly destroyed with its shelves ripped off and affixed to it with black tape.

There is no question that the damage to the property goes well beyond normal wear and tear that any landlord would anticipate upon tenants vacating a property. Even when taking into account the length of time that Debtors resided in the property, the amount of damages caused to the property is shaking. In short, Debtors wrecked the property during their tenancy. Debtors must now bear the costs to repair the property.

While Debtors claim to have made repairs to the property, there are reasonable grounds to support that the repairs made were wholly insufficient. Both Claimant and Beauford Williams testified that following Debtors' repairs to the drywall, in at least one instance, a simple knocking on the wall above the patch caused the entire patch to fall out of the wall. The drywall repairs were rough and unacceptable especially considering the condition of the property before Debtors took possession. In addition, both Claimant and Mr. Stimpert testified that most, if not all, of Debtors' repairs had to be undone before proper repairs could be made.

Claimant asserts that Debtors had no education or experience to indicate that Debtors were able to make sufficient repairs of this type. Even Debtor Cory Walker indicated that he had no special knowledge or experience that would qualify him to make these types of repairs

properly. Yet Debtors still maintain that the repairs they made were sufficient. The court is not convinced and believes that Debtors' repairs were wholly inadequate. Debtors' insufficient attempts to repair the property likely raised the costs of repairs, rather than lowering the costs.

Further, Debtors argue that the receipts totaling $4,080.60 for materials for the repairs are mostly for items that Debtors did not damage. After a review of all materials purchased, the court finds that all of the materials were necessary for repairs of damages that were caused by Debtors. The photographs presented by Claimant indicate extensive damages, as discussed above, and the receipts for materials for repairs coincide with the damages presented to the court.

Debtors also assert that the $1,500.00 invoice for labor repairs is only an estimate and that it is not itemized. Both Claimant and Mr. Stimpert testified that they have worked together on previous occasions and it is their normal practice for Mr. Stimpert to provide an estimate and for Claimant to pay Mr. Stimpert based on the estimate. Further, Mr. Stimpert testified that he already has spent 60 hours at the property doing repairs. At $1,500.00 for the total labor for all the repairs, Mr. Stimpert's hourly wage would be $25.00, an amount that the court finds to be entirely reasonable. Moreover, Mr. Stimpert testified that the repairs are not yet complete and that he will spend additional time completing repairs at the property thereby reducing his hourly wage for the job. The court finds that the practices of Claimant and Mr. Stimpert are reasonable and that the fee of $1,500.00 to Mr. Stimpert is reasonable.

Given the extensive damage to the property, Claimant's costs to repair damages of this magnitude could have been much higher. The condition in which Debtors left the property is completely unacceptable. It is unreasonable of Debtors to expect that Claimant should bear the burden for the costs of these repairs. The court finds that Claimant has met his burden of proof with respect to the costs for materials and labor to repair the damages caused by Debtors.

Accordingly, the court finds that Claimant is entitled to the total cost of materials for repairs in the amount of $4,080.61 and to the total cost of labor for the repairs in the amount of $1,500.00.

## CONCLUSION

Accordingly, the court finds that Claimant's proof of claim is allowed in the total amount of $5,674.43, which is comprised of $171.00 for municipal court fees, $747.50 for rent for January 2011 and late fees associated with such rent, $475.32 for unpaid electricity bills, $4,080.61 for materials to repair damages caused by Debtors, and $1,500.00 for labor to repair damages caused by Debtors, after deducting Debtors' security deposit of $1,300.00. The court will issue an order contemporaneously with this memorandum sustaining in part and denying in part Debtors' Objection to Proof of Claim.

# # #

**Service List:**

William C Fithian, III
111 N Main St
Mansfield, OH 44902

Cory Craig Walker
Jennifer Pauline Walker
145 Madison Road
Mansfield, OH 44905

David M. Williams
696 Stonewood Court
Columbus, OH 43235

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702